Rockingham,
Dec., 1895.

GROSS *v.* BOARD OF WATER COMMISSIONERS OF PORTSMOUTH.

A board of commissioners entrusted with the management and control of water-works owned by a city are public officers, and are not liable as a body corporate in an action for negligence.

CASE, for personal injuries. Demurrer to the declaration.

*Samuel W. Emery*, for the plaintiff.

*Calvin Page*, for the defendants.

WALLACE, J. The plaintiff alleges that she was injured July 14, 1894, by a defect in a Portsmouth highway caused by a trench dug in the highway, April 20, 1894, and improperly filled, in work done by the water commissioners acting under Laws 1891, c. 209. The writ was served on the mayor of Portsmouth and the persons who were water commissioners at the time of service. None of the defendants were water commissioners at the time of the plaintiff's alleged injury. Her contention is that, under the act of 1891, the commissioners are a *quasi* corporation, liable as a body existing in contemplation of law, and having a perpetual succession in the changing members of whom it is composed. Admitting that the present members of the board are not personally liable for the alleged negligence of their predecessors, she contends that they are liable as a *quasi* corporate body, and that a judgment rendered against them in their *quasi* corporate capacity may be satisfied out of their *quasi* corporate property.

To ascertain whether there is such a body, and whether there is or lawfully may be any such property, or any property applicable to the satisfaction of such judgment, it is necessary to examine the statute. The act of 1891 is entitled, "An act to enable the city of Portsmouth to issue water bonds and manage and control its water supply," and recites that " the city of Portsmouth " has acquired by purchase the stock of the Portsmouth Aqueduct and thereby succeeded to the rights of that corporation, and that the public good requires that the works of the aqueduct should be enlarged and improved or other water-works constructed. " Said city " is authorized by s. 1 to issue bonds, " and the proceeds of the sale of said bonds shall be applied to the management, enlargement, and improvement of said water-works and aqueduct property, or to the construction of other water-works, and obtaining other sources of supply of water if

found necessary, and the management of the same," and payment for the stock purchased by the city.

" Sect. 2. Said city shall possess the rights, . . . and property of said . . . Portsmouth Aqueduct in the same manner as if the same had been originally granted to said city."

By *s.* 3, " said city may purchase " additional lands and interests in realty necessary or convenient for said water-works, " or if unable to agree upon a price to be paid " therefor, " said city " may obtain the same by an exercise of the right of eminent domain.

Section 4 vests " the immediate management and direction of the water-works of said city " in a board of water commissioners consisting of four citizens.   The mayor of the city for the time being is *ex officio* a member of the board.   Section 6 appoints John H. Broughton, Calvin Page, and Jeremiah A. Farrington members of the board, for terms of three, four, and five years from February 1, 1891.

Section 5 authorizes the mayor and aldermen to appoint one member of the board annually, commencing in January, 1894. The board may choose one of their number as chairman, and appoint a clerk.   They may appoint a superintendent of the works and other agents and servants, and fix their compensation. By *s.* 7, the mayor receives no compensation as a member of the board.   The other members receive $500 each per annum during the first three years after the organization of the board, and $300 thereafter.

Section 8 gives the board the control and management of the construction and enlargement of the works, empowers them " to make all such contracts . . . for and on behalf of the city in relation thereto as they may deem ·proper," gives them " full charge and control over the said works when enlarged and constructed," empowers them to " establish rates and tolls, and prescribe rules and regulations for the use of water," to " sell and dispose of such articles of personal property connected with said works as they shall deem expedient," to " purchase such property as may be in their judgment necessary," and requires them to " annually make a report to the city councils of the condition of the water-works and the funds belonging to their department, and the expenses and income thereof, which shall be published in the city report of each year."

Section 9 requires that " all moneys received in any way on account of said water-works shall be paid into the city treasury and shall be kept and applied exclusively for the uses of said water-works, including the payment of the bonds issued under this act and the interest thereon ; and all bills and claims for expenditures connected with said works shall be approved by the board of water commissioners before they are paid by the treas-

urer.   And the city treasurer shall keep his accounts relating to
the water-works, including said bonds, separately and distinctly
from all other receipts and payments."

Under *s.* 10, if it is advisable to sell a portion of the real estate
purchased by the city of the aqueduct company, the water com-
missioners with the approval of the city councils may sell the
same, and a deed executed by the mayor shall pass the title.
"The funds derived from such sale shall be applied to the reduc-
tion of the bonded debt hereby authorized."

No change material in this case is made by *s.* 21, *c.* 183, Laws
1895.

No title to the aqueduct property is vested in the board of
water commissioners as individuals, or in a corporate or *quasi* cor-
porate capacity.   The property of the aqueduct company passed
to and remained in the city.   If any of that property is sold by
the water commissioners with the approval of the city councils,
the title passes from the city to the purchaser by a deed executed
by the mayor, who is specially authorized by the statute to ex-
ecute it.   The commissioners may make contracts "for and on
behalf of the city" in relation to the construction and enlarge-
ment of the water-works.   When they sell "articles of personal
property connected with said works," it is the property of the
city that they sell.   There is no provision, express or implied,
that the aqueduct property, bought by the commissioners or any
other persons and paid for with the money of the city, shall vest
in any other person or body than the city.   Section 9, requir-
ing money received to be paid into the city treasury and to
be kept and applied exclusively for the uses of the water-works,
including the payment of the water bonds, and requiring
the city treasurer to keep separate accounts relating to the
water-works, and the provisions of *s.* 8, requiring the commis-
sioners to make an annual "report to the city councils of the
condition of the water-works and the funds belonging to their
department," do not transfer the title to any property from the
city to the commissioners.

Calling aqueduct property the property of the water-works de-
partment, has no more effect upon the ownership of such property
than calling the property committed to the care of the army and
navy departments of the federal government the property of
those departments, has upon the title to that property.

There is no evidence of a legislative intent to vest any aque-
duct property in the commissioners or to pass a *quasi* act of
incorporation making the commissioners a *quasi* corporate body,
liable as such in actions of contract or tort.   The case does not
turn on a defect of procedure.   Justice and convenience may
require legal process to be addressed to a board of water com-
missioners and their successors, in their official capacity.   *Boody*

*v. Watson,* 64 N. H. 162, 192, 193. It is not now necessary to inquire whether, in any legal sense that has been or should be accepted in this state, there might be, for any practical purpose in a case of this kind, a distinction between a corporation and a *quasi* corporation. There is no evidence that the legislature intended the Portsmouth water commissioners should be a body corporate, either in an entire and unqualified or in a partial and limited sense, that would vest in them any property of a corporate, or semi-corporate, or *quasi* corporate character, and make them liable in a qualified corporate capacity, and not personally, in actions of contract or tort. The legislature intended that they should be public officers, and not a corporation in any sense that would allow this action to be maintained against them in a corporate capacity. This legislative intent, proved by all the competent evidence, is not affected by the decisions in other jurisdictions treating the question of corporate liability as one of law and not depending on such evidence, or dealing with evidence not found in this case. The action cannot be maintained.

*Case discharged.*

All concurred.